UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

vs.                                                      Case No. 18-CR-122

JACOB MACLIN,

    *Defendant*.

## JACOB MACLIN'S MOTION FOR REVIEW OF DETENTION ORDER

Jacob Maclin, through counsel, moves this Court, under 18 U.S.C. § 3145(b) for review of the detention order, and requests an order releasing him on conditions pending his trial in this matter.

## Overview

Maclin was arrested on March 31, 2018. Police stopped his vehicle for a traffic violation. They searched his car and found approximately 50 grams of marijuana and a gun. Maclin's a felon, and can't possess a gun. As a result, Maclin was charged in Milwaukee County Circuit Court with possessing marijuana with the intent to distribute it and possessing the firearm. He was released on bond. For nearly four months, Maclin complied with the conditions of his release. On June

5, a grand jury in this district indicted Maclin for his possession of the marijuana and firearm. *See* Doc. 1. It also charged Maclin with possessing a firearm in furtherance of a drug trafficking crime, the alleged possession of marijuana with the intent to distribute it. But Maclin wasn't informed of the indictment. And despite his compliance with all bond conditions in state court, the government issued the case on a warrant. *See* Doc. 1-1 (Information Sheet). When Maclin learned of the indictment and warrant, he came to federal court to turn himself in.

Maclin has a criminal history. In 1999, he was convicted of a robbery. As an 18-year old, he stole a bike from someone. He was placed on probation for four years. In 2003, just months before discharging from his probation, Maclin was arrested and charged with selling cocaine and unlawfully possessing a gun. He was 22. The offense involved three $10 bags of cocaine. His probation was revoked and he was convicted of selling the cocaine and possessing the gun. He went to prison for five years. When Maclin was in prison, he learned that he had a son. When he was released, he was determined to get custody of his son and be a good father to him. Shortly after he was released from prison, he was given that chance.

He was chosen by the Milwaukee District Attorney's Office as a candidate for the Safe Streets Initiative. Notably, this program was only available to people

2

the District Attorney and police deemed "non-violent offenders."[1] Maclin got a job at Community Warehouse. He worked there for ten years, and he completely turned his life around. He worked hard and was promoted to a manager. Community Warehouse continued to hire people through the program, and Maclin was a mentor to those individuals. Maclin also got married. He had 3 more children. His turnaround was so remarkable it garnered widespread media attention. He was even featured on a national story on the CBS Evening News.[2]

In 2014, Maclin was arrested in Michigan and charged with unlawful gun possession. His mother, who lived in Michigan, had been hospitalized after a suicide attempt. Maclin drove to gather her belongings, picked them up, and brought them back to Milwaukee to store them with another family member. Included in her belongings was a firearm and bulletproof vest. On the drive back to Milwaukee, police stopped Maclin. His car was searched and the gun and vest were found. Given the unique circumstances of the case, Maclin's felony charges were dropped. He was convicted of a misdemeanor and given a non-custodial sentence. Maclin has no other criminal history.

---

[1] *See* Community Warehouse Jacob Story, Youtube, *available at*:
https://www.youtube.com/watch?v=3nTyTIsNnyc&feature/ (last visited July 20, 2018).
[2] *See* Steve Hartman, *Cop and ex-con join forces*, CBS News (April 17, 2015), *available at:*
https://www.cbsnews.com/news/cop-and-ex-con-join-forces-in-unlikely-story-of-redemption/

3

At Maclin's initial appearance on July 16, 2018, Magistrate Judge Duffin detained Maclin pending trial. *See* Doc. 3. Judge Duffin concluded that no set of conditions could reasonably assure the safety of the community. Arraignment Transcript at 14. Judge Duffin opined that Maclin's behavior revealed "an ongoing refusal to acknowledge that you're not supposed to have a gun." *Id*. In detaining Maclin, Judge Duffin also noted that Maclin had admitted possessing marijuana with the intent to sell it. *Id*. Finally, Judge Duffin stated, "You've demonstrated that you just are going to continue to carry a gun, and you're just not supposed to." *Id*. at 14-15.

On July 19, 2018, the undersigned was appointed to represent Maclin. The next day, the defense filed a motion for bond, asking Judge Duffin to reopen the detention hearing and release Maclin on bond. *See* Doc. 10. Maclin presented information to the Court that had not been known to the defense at the time of the original detention hearing. That information included the circumstances of his 1999 arrest and the extent of his involvement at Community Warehouse. *Id*. But Judge Duffin found that this information was not "new." Doc. 11 at 3. Judge Duffin's order states:

> The information Maclin presents is not new. Although it may be new to his lawyer, it certainly is not new to Maclin. At the time of the detention hearing, Maclin knew the details of his prior convictions and the nature of

4

his former employment. The fact that his attorney subsequently learned additional details and thus now could use them to craft a more detailed argument for bond does not make the information new for the purposes of reopening a detention hearing.

*Id*. Judge Duffin denied Maclin's motion without a hearing. *Id*. Judge Duffin reiterated that he believed Maclin's conduct was indicative of a "pattern of behavior" reflecting that "Maclin was a clear danger to the community." *Id*.

## Legal Background

As this Court knows, 18 U.S.C.§ 3142(b) provides that a federal court "shall order the pretrial release" of a person charged with a federal crime unless no conditions exist that will "reasonably assure" the person's appearance or the safety of the community. Section 3142 further instructs that if the Court determines that conditions should be set on bond, the Court should impose "the least restrictive condition, or combination of conditions" to ensure the person's appearance and the community's safety. *See* 18 U.S.C. § 3142(c)(1)(B).

Although the charges brought by the government in this case create an initial presumption of detention, *see id.* at (e)(3), this presumption is rebutted by merely presenting "some evidence" that the charged person is not a flight risk or a danger. *United States v. Dominiguez*, 783 F.2d 702, 707 (7th Cir.1986). The government retains the ultimate burden of showing by clear and convincing

5

evidence that "there are no conditions of pretrial release which will reasonably assure the defendant's appearance and the safety of others and the community." *United States v. Leyba*, 104 F. Supp. 2d 1182, 1183 (S.D. Iowa 2000). "Absent such a showing by the Government, pretrial release should be granted." *Id.*

The defense now requests that this Court review the magistrate judge's detention order under 18 U.S.C. § 3145(b). This review must be done in a timely fashion and the reviewing court considers the matter de novo. *See id.*; *United States v. Portes*, 786 F.2d 758, 761 (7th Cir. 1985). When conducting such a review, a district court has the authority to rely on the existing record, but may hold a new hearing if necessary. *See United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991).

**Argument**

Jacob Maclin is not a danger to the community. The facts of this case don't allege violence or reflect a danger to the public. And while Maclin has a criminal history, the evidence supports that Jacob Maclin is not the same person who went to prison in 2002. The only conduct in his background that resembles violence is his stealing a bike from its rider almost 20 years ago. To the extent Maclin's alleged conduct is indicative of a "pattern" of behavior, something he disputes, it is not a pattern that reflects a danger to the community. After all, the two things Maclin is alleged to have done in this case, possessing marijuana and possessing a gun, are

6

things done legally by millions of people in the United States every day. *See United States v. Ingle*, 454 F. 3d 1082, 1086 (10th Cir. 2006) (noting that a history of gun possession doesn't disqualify release because "ex-felons have the same motives as lawful possessors of firearms to possess a firearm."). In fact, nearly every Circuit Court of Appeals has categorically concluded that a felon possessing a gun does not create a substantial risk of danger. *Id*. (collecting cases). Maclin's possession of a gun does not itself translate into a finding that he is a "clear danger to the community." Doc. 11 at 3.

Should the Court conclude that Maclin's three firearm-related arrests reflect a pattern, the Court can consider that at sentencing under 18 U.S.C. § 3553(a). But Maclin submits that these arrests are not reflective of a pattern of anything, much less danger. These three arrests occurred over a 16-year period. Sure, Maclin's first gun arrest and conviction was reflective of someone engaging in drug dealing. But he served his sentence and successfully completed four years of extended supervision. At first glance, this case might appear to be reflective of drug trafficking also. But Maclin did not admit to selling marijuana or possessing it with the intent to sell it, as Judge Duffin noted. He told police he was taking it to a party where he was going to share it with his friends. That is not the sort of drug dealing that resulted in Maclin's 2003 conviction. More importantly, it's not the sort of

7

Case 2:18-cr-00122-PP   Filed 07/31/18   Page 7 of 9   Document 16

"drug-trafficking" that represents a threat to the community or a danger to public safety. Indeed, Maclin is not alleged to have used the firearm or threatened anyone with it. Sandwiched between these two arrests is the 2014 arrest. But that arrest is an outlier with unique circumstances. It resulted in a misdemeanor and non-custodial sentence.

Finally, to the extent that Maclin's arrest history indicates he poses a danger, Maclin has presented significant proof—and is prepared to offer more—that his arrests don't tell the whole story. Maclin has a wealth of support in the community. His employer, Nick Rinnger (Community Warehouse CEO) has worked side-by-side with Maclin for almost four years. He believes that not only is Jacob Maclin not a danger to the community, but that he is an asset to it. Mr. Rinnger brings some credibility also. He works closely with the United States Attorney's Office and Magistrate Judge Gorence in the district's Re-entry Court. He has submitted a letter of support (*see* Exhibit A), and is prepared to testify on Maclin's behalf to his belief that Jacob Maclin is not a danger to the community.

The standard conditions of release imposed in this district are sufficient to reasonably assure the community's protection. *See United States v. Hammond*, 204 F. Supp. 2d 1157, 1166 (E.D. Wis. 2002) (noting that "Section 3142 does not seek ironclad guarantees"). Should the Court feel that additional conditions, like

8

location monitoring or a third party custodian, are necessary to meet the requirements of § 3142, Maclin would not oppose them.

## Conclusion

Because Jacob Maclin does not pose a danger to the community or a risk of nonappearance, he respectfully asks that the Court order him to be released pending trial.

Dated at Milwaukee, Wisconsin, this 31st day of July, 2018.

Respectfully submitted,

*/s/ Joshua D. Uller*
Joshua D. Uller, WI Bar #1055173
Federal Defender Services
   of Wisconsin, Inc.
517 E. Wisconsin Avenue – Room 182
Milwaukee, WI 53202
Tel. (414) 221-9900
Email: joshua_uller@fd.org

*Counsel for Defendant, Jacob Maclin*