UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

vs.                                                                                       Case No. 18-CR-122

JACOB MACLIN,

    *Defendant*.

## MACLIN'S REPLY TO MOTION FOR DISCOVERY

The impetus for Maclin's discovery motion regarding selective enforcement and prosecution began with a simple question: why does it seem like all our clients in § 924(c) marijuana cases are African-American when this district is majority white? This question, combined with some frustration over the government seeking harsh consecutive mandatory minimums in relatively small marijuana cases, led to further consideration of whether there might be an issue. Based on that simple question, defense counsel began investigating whether available data would confirm or dispel counsel's initial impression that blacks, rather than whites, were being disproportionately prosecuted for this offense.

So defense counsel embarked on the tedious process of trying to gather information that would help determine the question of whether there might be discrimination in the enforcement of these cases. This was done against a backdrop of some significant and pervasive societal concerns. Wisconsin locks up more blacks than

Federal Defender Services
of Wisconsin, Inc.

any other state.[1] White people use and sell drugs, particularly pot, as much as or more than black people.[2] White people are more likely to possess guns than black people.[3] Finally, this perceived increase in prosecution of marijuana § 924(c)'s comes as enforcement of marijuana laws appears to be relaxing everywhere else. And while Wisconsin has not yet legalized or decriminalized marijuana, the people of Wisconsin and the state's governor have expressed their support for doing so.

The first question was whether African-Americans were actually being charged more often with § 924(c) marijuana cases, as it appeared to defense counsel. Research confirmed that to be so, a fact the government doesn't dispute. The defense then undertook the process of determining whether, as *Armstrong* requires, similarly situated white people could have been federally prosecuted for violating § 924(c), but were not. Maclin identified over 40 white people who the government could have charged, but did not. This raised further concerns, and meets the threshold required to obtain discovery on a claim for selective prosecution and selective enforcement.

---

[1] Cheryl Corley, *Wisconsin Prisons Incarcerate Most Black Men in U.S.*, NPR (October 3, 2013). Available at: https://www.npr.org/sections/codeswitch/2013/10/03/228733846/wisconsin-prisons-incarcerate-most-black-men-in-u-s
[2] ACLU of Massachusetts, *The War on Marijuana in Black and White* (October 2016): Available at: https://www.aclum.org/sites/default/files/tr-report-10-2016-final-with-cover.pdf
[3] Kim Parker et. al., *The demographics of gun ownership*, Pew Research Center (June 22, 2017). Available at: http://www.pewsocialtrends.org/2017/06/22/the-demographics-of-gun-ownership/

2

Federal Defender Services
of Wisconsin, Inc.

The undeniable truth is that there is a problem of racial disparity in the prosecution and incarceration rates in this country. Those problems are even greater locally. So rather than expressing indignation at the suggestion that the prosecutorial or law enforcement functions might play a role in these problems, Maclin asks the government to engage in a bit of self-reflection. If the government is "proudly committed to pursuing equal justice, free from discrimination based on race," R. 44 at 3, the government should be open to evaluating the role its policies (and those of the law enforcement agencies it works with) play in contributing to the overwhelming racial disparities within the criminal justice system.

The government's response also misses the general point. Maclin concedes that, at least at this juncture, he lacks the proof to bring a substantive selective enforcement or selective prosecution claim; that's why this is a motion for discovery. Without discovery, Maclin can't prove an equal protection violation. *See United States v. Sellers*, 906 F. 3d 848, 850 (9th Cir. 2018) (defendant "unlikely to meet this demanding standard without information that only the government has."). Even though Maclin's motion addresses large problems, the legal issue it presents is quite narrow: has he presented "some evidence, tending to show" the essential elements of an equal protection violation. *Id*. at 864. Because he has done so, Maclin asks the Court to grant his motion and order the government to produce discovery.

3

Federal Defender Services
of Wisconsin, Inc.

### I. Maclin's data is not misleading

The government suggests that Maclin has cherry-picked an 18-month window that somehow distorts the charging practices in the district. This isn't so. As indicated above, Maclin began the tedious process of exploring similarly situated defendants shortly after his indictment. Maclin's lawyer made his appearance on July 18, 2018. R. 6. There are a few reasons Maclin's lawyer reviewed the 18-month period preceding his indictment. First, that timeframe generally correlated with when Maclin's lawyer began working in the office of the Federal Defender.[4] Second, once the defense's investigation began, it became more difficult and burdensome to expand the timeframe. While it is relatively easy to identify the federal prosecutions under § 924(c), it's much more difficult to locate and identify the state cases that could have been charged. For continuity of dates, the defense focused on the approximately 18-month period immediately preceding his indictment.

This timeframe is telling for an additional, albeit secondary reason: it corresponds with a change in administrations. Different administrations advance different policies. While that is their prerogative, those policies cannot be driven on consideration of race.

---

[4] In that timeframe, Maclin's lawyer has represented four of the ten individuals with marijuana-related § 924(c) charges identified in Maclin's motion. The Federal Defender's Office has represented three of the other individuals

4

Federal Defender Services
of Wisconsin, Inc.

The policies advanced by the United States Attorney's Office come from the top of the Department of Justice and White House.

The government criticizes Maclin's inclusion of the Terry Robinson and Jerry Scott cases. R. 44 at 9. But contrary to the government's claim, Robinson's case does not appear, at least on its face, to be "primarily a dog-fighting case." While Robinson had dogs, the search warrant executed at his home was based on suspected drug activity. *United States v. Robinson*, 17-cr-97 (PP), ECF No. 30 (E.D. Wis. 2018). The gravamen of charges against Robinson, both in terms of their number and seriousness, were for gun and drug offenses.[5] As to the Jerry Scott case, while the drug charge included an allegation that Scott possessed methamphetamine, Scott's was indisputably a marijuana case.[6]

Interestingly, the government criticizes Maclin for including the Jerry Scott case in its analysis. Yet it simultaneously criticizes Maclin for not including the Joshua Klein case, even though Klein's case is overwhelmingly a heroin case. Contrary to the government's claim that Maclin's analysis included cases that were not straight marijuana cases, Maclin actually excluded from his analysis § 924(c) cases that included marijuana in addition to

---

[5] After all, Robinson has a prior dog-fighting conviction that resulted in a six-month sentence. *See United States v. Robinson*, 14-cr-82 (LA), ECF No. 93 (E.D. Wis. 2015).
[6] Maclin's lawyer also represented Jerry Scott, and is therefore familiar with the facts of the case and the nature of the investigation and charges. In his case, police were investigating marijuana sales out of a residence on Milwaukee's far northwest side. Based on marijuana sales from the residence, they obtained a search warrant. During the search, they found a backpack full of marijuana and a firearm. In another part of the home, they found a few ecstasy pills. There was no indication who those pills belonged to or whether they were intended for distribution. *See United States v. Scott*, 17-cr-156 (LA), ECF No. 16 at 3 (E.D. Wis. 2017).

5

other drugs.[7] Maclin identified several § 924(c) prosecutions in the same 18-month period (and since) that involved marijuana in addition to other drugs. His motion does not include them, but they are listed below, along with the drugs alleged in the indictment.

| 17cr79  | Darius Trawick   | Black | Crack, marijuana, OxyContin    |
| 17cr145 | Andrae Dotson    | Black | MDMA, heroin, cocaine, marijuana |
| 17cr147 | Travis Office    | Black | Crack & marijuana              |
| 18cr142 | Joe Turner       | Black | Heroin, cocaine, marijuana     |
| 18cr142 | Joseph Copleand  | Black | Heroin, cocaine, marijuana     |
| 18cr142 | Orlando Copeland | Black | Heroin, cocaine, marijuana     |
| 18cr196 | Zachary Cloyd    | Black | Ecstasy and marijuana          |
| 18cr239 | Joshua Klein     | White | Heroin and marijuana           |

The government does not criticize Maclin for not including the first seven individuals listed (who are all black) in its analysis. But even if Maclin included data from the second half of 2018 in his analysis, he still would have excluded the Klein case from for the same reason he excluded other cases listed above. It's not a marijuana 924(c). Klein's case is primarily a heroin case: count one of his indictment charges a 100-gram heroin conspiracy.

This discussion raises another issue: the government criticizes the defense for looking only at § 924(c) marijuana cases. R. 44 at 11. But that's the point. Maclin doesn't deny that the government has charged white people with possessing firearms in furtherance of cocaine, heroin, and methamphetamine trafficking crimes. Those crimes

---

[7] Again, the defense didn't—and still doesn't—view the Jerry Scott case as anything but a marijuana case.

6

Federal Defender Services
of Wisconsin, Inc.

Case 2:18-cr-00122-PP    Filed 02/25/19    Page 6 of 12    Document 46

are more serious. Some crimes are sufficiently serious that they will be prosecuted a certain way virtually all the time. It is the less serious crimes, like the low-level marijuana offense charged in Maclin's case, where discretion is exercised more often. The point of this motion is that when a charging decision calls for discretion, that discretion appears to be exercised differently for white people than for black people. That's not an accusation of racism. It's an observation of fact based on statistics.

As indicated, Maclin's data analysis focused on January 2017 through June of 2018, because that was the data set that Maclin began working with. Maclin used the end of June as the cutoff, because that's when Maclin was charged. More to the point though, the government gives no reason why an 18-month period is an insufficient sample size. The government has prosecuted more people for marijuana-related § 924(c) violations in that 18-month period than in the three years that preceded it. So it actually serves as a pretty good window of time.

Nonetheless, the defense has attempted to identify all marijuana-related § 924(c) prosecutions in the district in the ten years that preceded the almost-5-year window identified in the original motion. Between 2004 and 2013, there were a total of 23 marijuana related § 924(c) prosecutions in the district. *See* Exhibit 4. Of those, 17 were minorities (11 black) and 6 were white. Combining that ten-year period, with the three-

year period that followed, the United States Attorney's Office prosecuted 29 marijuana § 924(c) cases over 13 years, an average of about 2.3 such cases per year.

So the data supports two propositions significant to this motion. First, enforcement is up and more people are being charged with marijuana § 924(c)'s. Second, during this period of increased enforcement, the government has only charged minorities, and largely blacks. And whereas the government has not in the past typically sought convictions and the accompanying harsh sentences on the § 924(c) charges, that is not so any more.[8] What's more, the § 924(c) charges are being brought against people accused of being very low-level marijuana dealers.

### II. The focus of federal prosecutions of Milwaukee defendants is indicative of discriminatory intent when considered along with the other evidence Maclin has presented.

Part of Maclin's argument is that the government's singular focus on Milwaukee is indicative of discriminatory intent. R. 41 at 17-19. The government mistakenly interprets this as "the heart" of the defendant's motion.[9] R. 44 at 15. Maclin's case does

---

[8] It appears that in fifteen years, not one white person has been convicted of a § 924(c) charge where the underlying drug offense was a marijuana (only) trafficking crime.

[9] The government also misconstrues Maclin's analysis of the government's charging practices with respect to § 922(g)(1). Maclin did not argue, as the government claims, that every single stand-alone felon-in-possession charge in the district was originally charged in Milwaukee County. Maclin identified two general groups of felon-in-possession charges. One group involved individuals whose cases were originally charged in state court and whose investigations and arrests had no identifiable federal involvement. The second group was every other 922(g)(1) case. Maclin's claim, which he stands by, is that all cases in that first group come from Milwaukee. The three cases the government identifies, Anthony Lee, David Culver, and Jeremy Fish, are included in the second group. Lee and Culver were targets of an ATF investigation into stolen firearms. And Fish has a prior federal conviction.

Federal Defender Services
of Wisconsin, Inc.

not rest on the government's focus on Milwaukee. After all, "disparate impact and foreseeable consequences, without more, do not establish a constitutional violation." *Columbus Bd. of Ed. v. Penick*, 443 U.S. 449, 464 (1979). On its own, the government's practice of selecting state court cases from only Milwaukee is not sufficient to prove an equal protection violation. But it is one factor, among others, that the Court can and should consider:

> Adherence to a particular policy or practice, with full knowledge of the predictable effects of such adherence upon racial imbalance . . . is one factor among many others which may be considered by a court in determining whether an inference of [discriminatory] intent should be drawn.

Id. at 464-65 (quoting *Penick v. Columbus Bd. of Ed.*, 429 F. Supp. 229 (S.D. Ohio 1977), *aff'd in part, remanded in part*, 583 F.2d 787 (6th Cir. 1978), *aff'd*, 443 U.S. 449 (1979) (internal citations omitted); *see also Sellers*, 906 F.3d at 861 ("If the agents knew they were limiting their operations to minority neighborhoods and made no effort to stage operations elsewhere, without more, that's also potentially indicative of discriminatory purpose.").

The government goes to great lengths to justify its focus on Milwaukee. To be sure, those arguments will be relevant to a substantive equal protection challenge down the line. But at this juncture, the question is whether Maclin has shown *some* evidence of discriminatory effect and discriminatory intent such that he can pursue this claim further. He's done so.

9

Federal Defender Services
of Wisconsin, Inc.

### III. The government fails to address how the white individuals Maclin identified fail to meet the *Armstrong* and *Davis* threshold showing

The government argues that Maclin fails to meet the *Armstrong* threshold because, 1) he hasn't demonstrated that the government knew of any of the individuals identified in Exhibit 3, and 2) he fails to demonstrate that the defendants listed are similarly situated. As to its first argument, that's not true. One of the individuals listed in Exhibit 3 (Corianne Markowski) is a federal defendant the United States Attorney's Office is currently prosecuting. And under *Armstrong*, that's enough to get discovery on selective prosecution. But Maclin's motion doesn't just involve selective prosecution. It also involves selective enforcement. And with respect to selective enforcement, Maclin doesn't have to show that federal prosecutors knew of the individuals identified in Exhibit 3. *See United States v. Sellers*, 906 F.3d 848, 854 (9th Cir. 2018) ("The Third and Seventh Circuits have already come to the conclusion that Armstrong's rigorous discovery standard does not apply in the context of selective enforcement claims").

As to the argument that Maclin hasn't demonstrated that the individuals listed in Exhibit 3 were similarly situated, at least in terms of their criminal histories, many of the people Maclin identified have serious criminal histories with drug trafficking convictions and crimes of violence. For example, Geoffrey Salaja has three prior drug trafficking convictions. Several of the defendants (Jesse Slater, John Olson, Albert Smith, and Jason Nye) from Kenosha County, which according to the government's statistics has a

10

Federal Defender Services
of Wisconsin, Inc.

comparable rate of per capita violent crime, have lengthy criminal records with prior drug trafficking convictions.[10] Some of the white Milwaukee defendants also have multiple prior drug trafficking felonies. Some appear to have gang involvement. For example, court documents from Lynn Washuleski's case in Menominee County reflect he has connections to the Drifters and Hell's Angels motorcycle gangs. So a majority of the individuals listed in Exhibit 3 are similarly situated to the federal defendants like Maclin, both in terms of the conduct they are alleged to have engaged in as well as their backgrounds.

## IV. Conclusion

The problem of racial disparity in this district and the reasons for it should be explored. While the statistics Maclin presented may not be perfect, and the government may quarrel with some of the choices, Maclin has made the showing necessary at this juncture to obtain discovery. With respect to the enforcement and prosecution of marijuana 924(c) charges, Maclin has presented evidence that beginning in 2017, enforcement has more than doubled. He's presented evidence that during that period of increased enforcement, the government has only prosecuted minorities, and largely black people. He's identified over 40 white people, many of whom have severe criminal histories, who have engaged in conduct similar or more severe than what the government

---

[10] While Milwaukee has about 11 times the number of homicides as Kenosha, it also has about 6 times the population.

11

Federal Defender Services
of Wisconsin, Inc.

alleges Maclin has done, who were not charged federally under § 924(c). He's presented evidence that the government is aware of at least one of those individuals. He's presented evidence that the government has only charged people from Milwaukee, which has by far the district's largest minority population. This all adds up to at least "some evidence" of discriminatory effect and intent. That is all Maclin must show to obtain discovery to pursue a claim of selective prosecution. For that reason, he asks the Court to grant his motion.

Dated at Milwaukee, Wisconsin, this 25th day of February, 2019.

Respectfully submitted,

*/s/ Joshua D. Uller*
Joshua D. Uller, WI Bar #1055173
Federal Defender Services
   of Wisconsin, Inc.
517 E. Wisconsin Avenue – Room 182
Milwaukee, WI 53202
Tel. (414) 221-9900
Email: joshua_uller@fd.org

*Counsel for Defendant, Jacob Maclin*