**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

 **v.**                                                               Case No. 18-CR-122

**JACOB L. MACLIN,**

    **Defendant.**

---

### ORDER ON DEFENDANT'S MOTION FOR DISCOVERY
### ON SELECTIVE PROSECUTION AND SELECTIVE ENFORCEMENT

---

On June 5, 2018, a grand jury returned a three-count indictment charging Jacob Maclin with possession of a firearm by a felon, possession with intent to distribute a mixture and substance containing marijuana, and possession of a firearm in furtherance of a drug trafficking offense. (Docket # 1.) The charges stem from a traffic stop conducted by Milwaukee Police on March 31, 2018. (Docket # 33 at 1.) Maclin pled not guilty. (Docket # 41). Trial is adjourned pending the resolution of pretrial motions. (Docket # 22.)

Maclin moves for discovery as to selective prosecution and selective enforcement, as well as leave to file a motion to dismiss the indictment once discovery is complete. (Docket # 41, # 46.) Maclin asserts that he has made the required showing to obtain such discovery. The government opposes the motion. (Docket # 44.) I will address Maclin's requests for discovery concerning selective prosecution and selective enforcement in turn.

*1. Selective Prosecution*

    1.1    Legal Standard

Federal prosecutors have broad discretion to enforce federal criminal laws as delegates of the President in the exercise of executive powers. *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citing U.S. Const., Art. II, § 3; 28 U.S.C. §§ 516, 547; *Wayte v. United States*, 470 U.S. 598, 607 (1985)). As a result, prosecutorial decisions are entitled to a presumption of regularity and courts must presume that prosecutors have properly discharged their official duties in the absence of clear evidence to the contrary. *Id.* (citing *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15 (1926)). Ordinarily, a prosecutor need only have probable cause to believe that the accused committed an offense defined by statute; in such a case, the decision whether to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in the prosecutor's discretion. *Id.* (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). However, basing the decision whether to prosecute on an unjustifiable standard such as race, religion, or another arbitrary classification constitutes "a practical denial" of equal protection of the law. *Id.* at 464–65 (citing *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

To entitle a defendant to discovery in aid of a claim of selective prosecution, the defendant must present "some evidence tending to show the existence of" discriminatory effect and discriminatory intent. *Id.* at 468–69. The standard for discovery in aid of such a claim is a "rigorous" one that requires actual evidence, not merely a claim that discovery would elicit such evidence. *Id.* at 468, 470 (explaining that the high standard appropriately balances enabling defendants with legitimate claims to proceed with the independence of the executive branch and the need not to impose unnecessarily burdensome discovery demands on prosecutors); *United States v. McGee*, No. 08-CR-17, 2008 WL 598133, at *2 (E.D. Wis.

Mar. 3, 2008) (quoting *United States v. Thorpe*, 471 F.3d 652, 659 (6th Cir. 2006)) ("'Merely demonstrating that better evidence cannot be obtained without discovery does not suddenly render otherwise insufficient evidence sufficient.'") However, "a defendant need not prove his case in order to justify discovery on an issue." *McGee*, 2008 WL 598133 at *1 (quoting *Thorpe*, 471 F.3d at 657).

To show a racially discriminatory effect, the defendant must present "some evidence that similarly situated defendants of other races could have been prosecuted, but were not." *Armstrong*, 517 U.S. at 469. To be "similarly situated," the comparator must be "*prima facie* identical in all relevant respects" to the defendant. *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002); *see also United States v. Skiljevic*, 11-CR-72, 2012 WL 2050861, at *10 (E.D. Wis. June 7, 2012) (denying discovery on selective enforcement when Bosnian Serb accused of atrocities during the conflict in the former Yugoslavia and fraud in seeking admission to the United States "presented no evidence that Bosnian Muslims who engaged in such conduct sought admission to the United States, lied on their immigration papers, had their fraud detected, yet were not prosecuted"). The evidence against comparators must be "'as strong [as] or stronger'" than that against the person arguing there has been an equal protection violation. *McDonald v. Village of Winnetka*, 371 F.3d 992, 1006 (7th Cir. 2004) (quoting *United States v. Smith*, 231 F.3d 800, 810–11 (11th Cir. 2000)). Additionally, the similarly situated individuals must have been known to prosecutors. *United States v. Barlow*, 310 F.3d 1007, 1012 (7th Cir. 2002) (for discovery on selective enforcement, defendant was required to "present evidence that the DEA agents observed whites engaging in the same behavior as Barlow . . . but chose not to approach them"); c*f. Armstrong*, 517 U.S. at 470 (defendants "could have investigated whether similarly situated persons of other races were

3

prosecuted by the State . . . *and were known to federal law enforcement officers*, but were not prosecuted in federal court") (emphasis added).

In *Armstrong*, the defendants presented an affidavit showing that in every one of the 24 cases under the relevant drug statutes closed by the Federal Defender's Office during 1991, the defendant was black. *Id.* at 459. The Court concluded that this was not sufficient to show discriminatory effect to justify discovery, because it failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted. *Id.* at 470. The Court also rejected a newspaper article discussing the discriminatory effect of federal drug sentencing laws as not relevant to an allegation of discrimination in decisions to prosecute, and dismissed affidavits recounting one attorney's conversation with a drug treatment center employee and another attorney's experience defending drug prosecutions in state court as recounting hearsay and personal conclusions based on anecdotal evidence. *Id.* The Court opined that the defendants could have investigated whether similarly situated persons of other races were known to federal law enforcement officers, but were not prosecuted in federal court. *Id.*

Statistical evidence is generally insufficient to demonstrate discriminatory effect. *United States v. Bass*, 536 U.S. 862, 864 (2002) (per curiam) ("Raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants."); *see also Armstrong*, 517 U.S. at 460–70 (finding it inappropriate to presume that members of all races commit all types of crimes at equal rates when interpreting statistics showing different rates of prosecution for different races relative to their percentage of the population). However, while "statistics alone rarely establish an equal protection violation," on motions for discovery on selective prosecution or enforcement in certain cases, "they may be sufficient to

establish the discriminatory effect prong of the *Armstrong* test." *Barlow*, 310 F.3d at 1011; *cf. United States v. Paxton*, No. 13-CR-103, 2014 WL 1648746, at *4 (N.D. Ill. Apr. 17, 2014) (allowing use of statistics to satisfy discriminatory effect prong in profiling case where identifying similarly situated individuals was impossible). Such statistics, however, must be "relevant and reliable." *Barlow*, 310 F.3d at 1011.

To show discriminatory intent, the defendant must present some evidence supporting an inference that racial considerations played a part in the decision to prosecute him. *See Chavez v. Illinois State Police*, 251 F.3d 612, 645 (7th Cir. 2001) ("Plaintiffs offer little evidence specific to their case that would support an inference that racial considerations played a part in their stops, detentions, and searches."). Discriminatory intent requires that the decisionmakers acted with discriminatory purpose, which implies more than just awareness of consequences; it implies that the decisionmaker chose the course of action at least in part because of its adverse effects on an identifiable group. *Id.* (citing *McCleskey v. Kemp*, 481 U.S. 279, 292, 298 (1987); *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir.1996)). Only in rare cases will a statistical pattern of discriminatory impact suffice to infer discriminatory intent. *Id.* at 647–48 (citing Supreme Court's acceptance of statistics to show intent to discriminate in the selection of a jury venire in a particular district, statutory violations under Title VII of the Civil Rights Act of 1964, and possibly legislative redistricting, but concluding that statistical analysis may not be the sole proof of a constitutional violation based on alleged racial profiling).

      1.2    Application to This Case

Maclin, who is African American, presents several documents as evidence in support of his motion for discovery on the selective prosecution claim. Exhibit 1 is a chart extrapolated

from the U.S. Census Bureau showing the racial makeup of the counties in the Eastern District of Wisconsin, showing that Milwaukee County is by far the most populous and has by far the greatest percentage of non-white residents. (Docket # 41-1.) Exhibit 2 lists defendants charged with drug trafficking crimes in the Eastern District of Wisconsin between January 1, 2017 and June 30, 2018 along with their race, showing that a significant majority are non-white. (Docket # 41-2.) Exhibit 3 lists 42 white defendants from various counties whom Maclin alleges could have been charged under § 924(c) but were not, along with selected facts from their state cases. (Docket # 41-3.) Finally, Exhibit 4 lists 23 defendants charged with marijuana-only violations of § 924(c) between 2004 and 2013, along with their races. (Docket # 46-1.)

Maclin describes the charging practices of the U.S. Attorney's Office for the Eastern District of Wisconsin as follows: Maclin reports that during an 18-month period between January 2017 and June 2018, the U.S. Attorney charged 176 people with drug trafficking crimes in the Eastern District of Wisconsin, of whom 90 were black, 41 were white, 30 were Hispanic, and 15 were of another race. (Docket # 41 at 10.) Thirty-five of those defendants were, like Maclin, also charged with violating 18 U.S.C. § 924(c) for possessing a firearm in furtherance drug trafficking crime. (*Id.*) Of those 35, 28 were black (80%), 3 white (9%), 2 Hispanic (6%), 1 Arab (3%), and 1 Native American (3%). (*Id.*)

Maclin also points to an increase over time in the number of defendants charged under § 924(c) specifically with respect to a marijuana offense. (*Id.*) While only 6 such charges were allegedly filed in the 36-month period preceding January 2017, 10 were charged in the 18-month period following January 2017. (*Id.* at 10–11.) Prior to January 2017, 4 defendants were black and 2 were white. (*Id.* at 10.) After January 2017, 9 were black, 1 was Arab, and

6

none were white. (*Id.* at 11.) Only the Arab defendant was the target of a federal investigation; the rest were black defendants arrested by the Milwaukee Police Department, 8 of whom were originally charged in state court with gun and drug offenses before being charged in federal court. (*Id.*) Regarding the 8 cases originally charged in state court, Maclin avers that they are "generally similar," stating that police either searched a residence or conducted a traffic stop that led to a search during which marijuana and the firearm were recovered. (*Id.* at 12.) Maclin states that some of the cases involved "larger amounts" of marijuana, but "most did not." (*Id.*) He classifies individuals with less as Maclin (about 50 grams), Carr (15 grams), Burns (less than 5 grams), Scott (about 365 grams), and Jackson (438 grams). Those with "larger amounts" are Thomas (1700 grams and a grow operation), Scott (2018 grams), and Lewis (5300 grams). (*Id.*)

Maclin also avers that in some instances, the cases "may" have been referred by the ATF or another agency for prosecution, but the defense "has reason to believe" that most referrals come from U.S. Attorney staff. (*Id.*) Maclin's motion alleges that paralegals from the U.S. Attorney's office regularly visit the Milwaukee County District Attorney's Office to select cases for prosecution, and that the U.S. Attorney only reviews cases and accepts referrals from inside Milwaukee County. (*Id.* at 12–13.)

Maclin states that Exhibit 3 identifies 42 white individuals who could have been charged with possessing a firearm in furtherance of a marijuana trafficking crime between January 2017 and June 2018, but were not referred to or charged by the U.S. Attorney's Office. (*Id.* at 13; Docket # 41-3.) Maclin states that since May 2015, not one white person has been charged in this district for a marijuana-trafficking crime under § 924(c). (*Id.* at 14.)

In assessing whether Maclin has made the threshold showing to entitle him to discovery on selective prosecution, it is useful to begin with the government's burden on a charge of knowingly possessing a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c). To sustain a conviction under § 924(c), the government must show that the defendant possessed the firearm (actual or constructive). *United States v. Castillo*, 406 F.3d 806, 812 (7th Cir. 2005). The government must also show that the specific firearm furthered the drug crime. *Id.* at 813–15. The non-exhaustive list of factors that a jury can consider in determining whether the firearm was possessed in furtherance of the drug crime includes: the accessibility of the firearm, the type of firearm, whether the firearm was stolen, the status of the possession (legitimate or illegal), whether the firearm was loaded, its proximity to drugs or drug profits, and the time and circumstances under which the firearm was found. *Id.* at 815. Additionally, the government asserts when deciding which defendants to prosecute under § 924(c), it evaluates the strength of the case under the *Castillo* factors, but also take into account a defendant's criminal history and other background information such as gang involvement or other activities of interest to the federal government. (Docket # 44 at 12–13.)

In this case, Maclin's arrest arose from a traffic stop following what appeared to surveilling officers to be a drug transaction. (Docket # 44 at 4.) Milwaukee police officers had been monitoring an area with a high rate of drug complaints. (*Id.*) Officers observed what appeared to be a mobile-to-mobile drug transaction between Maclin and another subject. (*Id.*) Officers conducted a traffic stop shortly thereafter, wherein they discovered a loaded Ruger 9mm pistol in the center console along with a glass jar containing several corner cuts of marijuana, and a second jar of marijuana on the floor of the back seat. (*Id.*) Officers recovered

a total of 46.29 grams of marijuana. (*Id.* at 4–5.) A pat-down of Maclin revealed $2,440 in small bills in Maclin's pocket. (*Id.* at 5.) Maclin also had a significant criminal history: he had previously been convicted of robbery with use of force, manufacture or delivery of cocaine, and possession of a firearm by a felon. (*Id.* at 1–2.)

With the government's burden of proof, the non-exhaustive *Castillo* factors, and the specific allegations against Maclin in mind, I find that Maclin has not sufficiently shown that any of the 42 white individuals are similarly situated to him to the extent necessary to obtain discovery on selective prosecution. The facts of the subset of white individuals who were traffic-stopped appear closest to the facts of Maclin's case, but even in those cases Maclin does not demonstrate that any individual was similarly situated to him. For example, the firearm in Maclin's case was reportedly loaded. Did the comparators also possess loaded guns? Maclin is charged with being a felon in possession of firearm, meaning he allegedly illegally possessed the firearm that is the basis of § 924(c) count. Were the firearms of the comparators also illegally possessed? The government submits that Maclin has prior convictions for firearms, drug trafficking, and violence. Did any of the comparators have similar criminal histories and/or other background characteristics to show that they were in fact similar to Maclin for prosecution purposes?

Furthermore, with the exception of Corianne Markowski, Maclin does not offer evidence that the comparators were presented to the U.S. Attorney for prosecution and that the U.S. Attorney declined to prosecute them, or that the U.S. Attorney was even aware of them. As to Markowski, who is federally charged with a drug offense but not with a § 924(c) charge, Maclin fails to show that Markowski is similarly situated so as to be a valid comparator. Was the handgun in Markowski's case illegally possessed? Is Markowski's

criminal history similar to Maclin's? Is the .40 handgun alleged in Markowski's case similar to the Ruger 9mm pistol alleged in Maclin's? Comparators must be identical in all relevant respects, but the comparators offered by Maclin fall short. Accordingly, Maclin has failed to make a sufficient threshold showing of similarly situated comparators to entitle him to discovery under *Armstrong*.

Even if Maclin had made a showing of discriminatory effect, Maclin's motion would fail because he must also show evidence of discriminatory intent. Maclin states that "whether it's for simple § 922(g)(1) prosecutions or more punitive § 924(c) prosecutions, the statistics show that the government does not seek out defendants or accept referrals from the district's other 27 counties." (Docket # 41 at 19.) Maclin argues that the "singular focus" on Milwaukee County reflects discriminatory intent, because the government "knows that a state court defendant in Milwaukee is more likely to be a minority, and specifically African-American." (Docket # 41 at 17–19 (citing *Columbus Bd. Of Ed. V. Penick*, 443 U.S. 449, 464 (1979) ("Actions having foreseeable and anticipated disparate impact are relevant evidence to prove the ultimate fact.")).) In further support of his argument about intent to discriminate, Maclin offers a history of marijuana prohibition in the United States up to the present time, when legalization is gaining popularity. (Docket # 41 at 20–24.) Maclin argues that despite the increase in marijuana legalization nationwide, there is an increase in marijuana-related § 924(c) prosecution that creates a widening racial disparity in the enforcement of marijuana laws, a policy Maclin blames for "spawn[ing] America's epidemic of black mass incarceration." (*Id.* at 23.) Maclin also states that the U.S. Attorney's office teamed up with law enforcement agencies to reduce crime in a 2.3 square mile area in Milwaukee by using an algorithm to identify targets for arrest and prosecution. (*Id.* at 24.) Maclin cited to a 2016

ProPublica report that found that algorithms like the one allegedly used in Milwaukee are biased against black people, and that "[t]he role these algorithms play in the administration of justice in the district raises some serious questions." (*Id.* at 24–25.)

The government counters by naming several defendants from outside Milwaukee County prosecuted on felon-in-possession charges both within and slightly outside the timeframe of Maclin's statistics. (Docket # 44 at 14–15.) The government also asserts several racially neutral reasons for the focus on Milwaukee County, including that Milwaukee is by far the most populous county in the district; has by far the most crime, violent crime, and gun-related crime of counties in the district; and that unlike the district attorney in Milwaukee, many prosecutors' offices elsewhere have the time and resources to handle gun cases on their own. (*Id.* at 13, 16–18.)

Maclin's motion certainly raises important policy concerns. However, to be entitled to discovery on his selective prosecution claim, Maclin must make some showing of discriminatory intent beyond disparate racial impact; he must show racially discriminatory motive or purpose. *Hunter v. Underwood*, 471 U.S. 222 (1985) (invalidating facially neutral law that had a disparate racial impact where direct, convincing evidence showed it was enacted for the purpose of disenfranchising blacks); *United States v. Davis*, 793 F.3d 712, 720 (7th Cir. 2015) (citing *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 (1979)) ("[The] strong presumption of honest and constitutional behavior [by federal prosecutors] cannot be overcome simply by a racial disproportion in the outcome, for disparate impact differs from discriminatory intent."); *United States v. Monsoor*, 77 F.3d 1031, 1034–35 (7th Cir. 1996) (selective prosecution claim required a showing that "(1) the prosecutor harbored genuine animus; and (2) absent this motive, defendant would not have been prosecuted"); *David K. v.*

*Lane*, 839 F.2d 1265, 1271 (7th Cir. 1988) ("Even if the administration's policies have a disparate impact on a suspect class, plaintiffs failed to show that the administration harboured a discriminatory motive in implementing those policies."); *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) (discriminatory purpose implies that "the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group"). Maclin has not made the required showing of any racially discriminatory purpose or motive. Without some such showing, Maclin is not entitled to discovery on a claim of selective prosecution.

2. *Selective Enforcement*

A motion for discovery on a selective enforcement claim is generally governed by the same standards as one on selective prosecution. *Barlow*, 310 F.3d at 1010. However, the standard may be more relaxed in some selective enforcement cases because the same presumption of propriety given to prosecutors does not apply to law enforcement officers. *See, e.g., Davis*, 793 F.3d at 720 ("Agents of the ATF and FBI are not protected by a powerful privilege or covered by a presumption of constitutional behavior."). Additionally, in *Chavez*, the Seventh Circuit pointed to the difficulties in showing discriminatory effect in selective enforcement cases such as racial profiling because of the difficulty in identifying similarly situated individuals who were not stopped, and concluded that "while it is true that statistics alone rarely state a violation of equal protection . . . they can be sufficient to establish discriminatory effect." 251 F.3d at 640; *see also Paxton*, 2014 WL 1648746 at *5 (explaining that statistics may be used when there is no other practical method available to show discriminatory effect, such as ATF stash-house sting operations, in which it was impossible

to identify individuals who were "similarly situated" to the individuals actually recruited by ATF).

Maclin's allegation of selective enforcement is an extraordinary one given that it is not directed toward any law enforcement agency or officer involved in his case. Maclin argues that the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") has a history of racially disparate enforcement. (Docket # 41 at 13–16.) He then states that ATF operations in this district have been plagued with similar problems, including one ATF operation in 2012 that opened a fake clothing store in Milwaukee and used it as a sting to have people sell drugs and guns. (Docket # 41 at 16–17.) He also alleges that the ATF, along with other law enforcement agencies and the U.S. Attorney's Office, uses a potentially suspect algorithm to identify targets for arrest and prosecution. (*Id.* at 24.) Even if all of Maclin's allegations about ATF are true, Maclin does not make any showing that this was relevant to his case. He was arrested by Milwaukee police officers after a traffic stop based on officers' observations of what they believed were drug dealing and traffic violations, with apparently no input from ATF. Maclin does not allege that he was the subject of any ATF investigation or sting operation, or that ATF referred him to the U.S. Attorney's Office for prosecution. Maclin has therefore not met his burden to obtain discovery on selective enforcement.

   3.  *Conclusion*

I am mindful that at this stage, I am addressing only Maclin's motion for discovery, not his substantive claims, so Maclin need not conclusively show an equal protection violation. However, to be entitled to discovery, Maclin must make at least the required threshold showing. Because Maclin has failed to make the requisite showing on either the selective prosecution or the selective enforcement claim, I must deny his motion for discovery.

**IT IS THEREFORE ORDERED** that Maclin's Motion to Compel Discovery (Docket # 41) is **DENIED**.

Your attention is directed to General L.R. 72(c), 28 U.S.C. § 636(b)(1)(B) and Federal Rules of Criminal Procedure 59(b), or Federal Rules of Civil Procedure 72(b) if applicable, whereby written objections to any recommendation or order herein, or part thereof, may be filed within fourteen days of the date of service of this recommendation or order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the Court in writing.

Dated at Milwaukee, Wisconsin this 22nd day of March, 2019.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge