UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

  v.                                           Case No. 18-cr-122-pp

JACOB L. MACLIN,

        Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR PRETRIAL RELEASE PENDING JUDICIAL PROCEEDINGS (DKT. NO. 107) AND DENYING DEFENDANT'S MOTION FOR A DETENTION HEARING (DKT. NO. 108)**

---

On June 5, 2018, the grand jury indicted the defendant, charging him with one count of being a felon in possession of a firearm, one count of knowingly and intentionally possessing marijuana and one count of knowingly possessing a firearm in furtherance of a drug offense. Dkt. No. 1. The defendant was arrested in mid-July 2018. At the time of his arrest, the defendant was unemployed and worked odd jobs to earn money to support his family. Dkt. No. 2 at 2. He had a 1999 felony conviction for robbery with the use of force; a 2003 felony conviction for being a felon in possession and manufacturing and delivering cocaine; and a 2014 conviction in the state of Michigan for carrying a concealed weapon. Id. at 4-5. Magistrate Judge William E. Duffin ordered the defendant detained pending trial. Dkt. No. 5.

Federal Defender Services appointed Attorney Josh Uller to represent the defendant, dkt. no. 7, and Attorney Uller promptly filed a motion for bond, dkt.

1

no. 10. The motion asserted that the defendant originally had been charged in Milwaukee County Circuit Court with the offenses that led to his federal indictment, that he had been released on bond by the state court and that he had made all his court appearances; the motion pointed out that the defendant had turned himself in when he learned that there was a federal warrant. Dkt. No. 10 at 1. The motion asserted that the 1999 robbery conviction involved the defendant stealing a bicycle from another person and that there was no allegation that the robbery had involved a firearm. Id. at 2. The motion described the defendant's ten years working at Community Warehouse, id., and counsel attached to the motion an article about that work, dkt. no. 10-1.

Magistrate Judge Duffin denied the motion. Dkt. No. 11. He agreed that there was no evidence that the 1999 robbery involved a firearm but pointed out that the two other convictions did. Id. at 3. Judge Duffin also noted that the defendant could have raised his history at Community Warehouse in the original detention hearing. Id.

Days later, the defendant moved for review of the detention order. Dkt. No. 16. The defendant asked this court to review Judge Duffin's decision; the motion included more detail than had been provided to Judge Duffin. This time, the defendant included a letter from the defendant's boss at Community Warehouse. Dkt. No. 16-1. This court held a hearing on August 7, 2018 and denied the motion for bond. Dkt. No. 25. The defendant had proposed that his wife act as his third-party custodian; the court expressed concern that the state of the marriage appeared unstable and that the defendant's wife was not

2

at home often due to work and school. Id. at 2. The court noted that the defendant was not working, so even if the court placed him on location monitoring, he'd have no job or school to go to. Id. Finally, the court was not convinced by the defendant's argument that the marijuana he had with him was for sharing at a party, pointing out that "sharing" drugs constituted "distribution" under the law. Id.

A week later, the defendant filed another motion for review of the detention order. Dkt. No. 26. The defendant asserted that he had been living with his wife at the time of his arrest (not living elsewhere, as the bond study had indicated). Id. at 2. He asserted that if he were released, his wife would not need to work double shifts at work, and explained that her schooling took place online. Id. at 3. As an alternative, the defendant proposed that he could live with some cousins. Id. As for work, the defendant indicated that he had an interview waiting for him at a property management company, and that in the meantime he could work security at a beauty supply store and could volunteer at Community Warehouse part time. Id. at 3-4. Over the government's objection, dkt. no. 27, the court issued a twenty-three-page order granting the defendant's motion and ordering him released on bond under conditions, including to live with one of his cousins and to submit to GPS monitoring, dkt. no. 29. See also, Dkt. No. 32. The court issued that order on August 22, 2018.

Initially, the defendant did well. On January 16, 2019, the pretrial services department reported that the defendant was working part-time at the beauty supply store, was taking care of his children while his wife was at work

3

and was complying with the conditions of bond. Dkt. No. 43. Pretrial services asked the court to reduce the defendant's GPS monitoring to radio frequency monitoring. Id. at 2. The court granted that request. Id. at 3.

On August 31, 2019, however, the defendant was stopped by the Milwaukee Police Department while driving a vehicle with illegal window tint and an expired registration. Dkt. No. 72 at 1. The police report indicated that when officers approached the vehicle, they smelled marijuana; when the officers asked the defendant to step out of the car, the defendant fled. Id. The court issued a notice to appear, but after holding a hearing on October 3, 2019, did *not* revoke the defendant's bond. Dkt. No. 77. It required the defendant to remain at his home except for work, court, attorney visits and other similar appointments, and ordered that the defendant could not drive. Id. at 3.

Again, the defendant initially did well. On April 10, 2020, pretrial services notified the court that the defendant was compliant with his bond conditions, was working two jobs and had tested negative on his drug screens. Dkt. No. 83. The court removed the location monitoring condition. Id. at 2.

The court was forced to adjourn the defendant's trial more than once as a result of the COVID-19 pandemic. In September 2002, the defendant received traffic tickets for operating while suspended and driving with expired plates. Dkt. No. 85 at 2. The court followed the advice of the pretrial services officer and did not revoke the defendant's bond or schedule a hearing. Id.

On March 23, 2021, however, the Milwaukee Police Department arrested the defendant. Dkt. No. 92 at 1. The MPD had received a report that the

4

defendant was selling drugs, and had a gun, at a residence on South 5th Place in Milwaukee. Id. Officers executed a search warrant; when they arrived, the defendant attempted to flee on foot. Id. at 1. In the residence, officers found heroin, cocaine base, marijuana, oxycodone, over $5,000 in cash, a money counter, eight digital scales, baggies, three cell phones, a gun box, ammunition and two fully-loaded semi-automatic handguns. Id. at 1-2. The court issued an arrest warrant, id. at 2, and Magistrate Judge Stephen C. Dries ordered the defendant detained, dkt. no. 94. On June 2, 2021, the federal grand jury returned an indictment against the defendant based on the facts of the March 23, 2021 search; that indictment charged the defendant with one count of being a felon in possession of a firearm, one count of possession of controlled substances with intent to distribute and one count of possessing a firearm in furtherance of a drug trafficking offense. United States v. Maclin, Case No. 21-cr-113-LA (E.D. Wis.), Dkt. No. 1.

At a July 27, 2021 hearing on the defendant's request to represent himself, the defendant made an oral motion for release. Dkt. No. 105. He argued that his legal paperwork had been altered and that some of his discovery was not time-stamped. Id. at 3. The court denied that motion on the grounds that the defendant had not presented any new evidence and had not demonstrated that he was neither a risk of flight nor a danger to the community. Id.

On August 13, 2021, the court received from the defendant a motion for pretrial release. Dkt. No. 107. The motion asserts that the defendant has a wife

5

Case 2:18-cr-00122-PP    Filed 08/30/21    Page 5 of 10    Document 110

and children at home whom he cannot protect because he is in custody. Id. at 2. It indicates that the defendant suffers from sleep apnea, that he needs a CPAP machine and that given the COVID-19 pandemic, he fears for his life. Id. at 2. The defendant asserts in the motion that he is not a danger to the community or a risk of flight and he gives his word to the court that he will appear for trial. Id. The same day, the court received from the defendant a motion for a detention hearing. Dkt. No. 108. The substance of this motion is the same as the substance of the motion for pretrial release.

Section 3142(e)(1) of Title 18 of the United States Code says that if, after a hearing, the court finds that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant and the safety of the community, the court "shall order the detention" of the person before trial. As the court noted in its twenty-three-page order issued August 22, 2018, section 3142(e)(3) requires the court to "presume" that there is no condition or combination of conditions that will reasonably assure the safety of the community if the defendant violates (among other laws) 18 U.S.C. §924(c). Dkt. No. 29 at 9. A defendant may rebut that presumption by coming forward with some evidence that he will not flee or endanger the community if released. Id. (citing United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986)). Even if a defendant does not meet that burden of production, a court cannot base a finding that no condition would assure the community's safety "on evidence that he has been a danger in the past, except to the extent that his past conduct suggests the likelihood of future conduct." Dominguez, 783 F.2d

at 707. The court must also look at the nature and circumstances of the charged offense, the weight of the evidence against the person, the history and characteristics of the defendant and the nature and seriousness of any danger to any person or the community posed by the defendant's release. 18 U.S.C. §3142(g).

In its August 2018 order granting the defendant's motion for release, the court concluded that the defendant had rebutted the presumption of dangerousness by showing that he never had been convicted of using a firearm against anyone, that he had a wife and children, and that for years he had a stable job. Dkt. No. 29 at 10. Those facts remain true today—the court has no evidence that the defendant ever has used a gun against anyone, the defendant still has a wife and children and the defendant has a history of employment. But the §3142 factors have changed since August 2018. The defendant now faces *two* federal indictments. Both involve possession of a firearm—the second one involves possession of two, loaded firearms. Both involve possession of drugs and, unlike the first offense, the facts surrounding the second offense support a clear inference that the defendant was selling drugs; he admitted as much to officers when he was arrested. The defendant committed the offense that gave rise to the second indictment while he was on bond for the charges in the first indictment. Since his first federal arrest in 2018, the defendant twice has fled from officers.

While the court concluded that the nature and circumstances of the first offense, while concerning, did not show that there were no circumstances that

7

would assure the safety of the community, the allegations regarding the second offense change that calculus. The allegations of the second offense show that even when the defendant was facing federal charges, even when he knew that he was on federal supervision, he possessed two loaded guns, ammunition and large amounts of a variety of dangerous controlled substances. A person who deals drugs while in possession of loaded firearms presents several dangers to the community—the danger that someone will be shot, the danger that someone who buys the drugs will overdose, the danger of addiction.

The same is true regarding the weight of the evidence against the defendant. While the court concluded that the facts surrounding the §924(c) charge in the first indictment were "murky," the facts surrounding that charge in the second indictment—a charge that carries a mandatory minimum prison term—are less so. The defendant was found alone in a house with two loaded guns, a large amount of drugs and a significant amount of drug paraphernalia. He admitted to officers that he "touched" the guns and that he was selling drugs. The weight of the evidence is significant.

As to the history and characteristics of the defendant, some things remain the same—the defendant has a work history (even more of one than he had in August 2018), he has a family, there is no evidence of mental health issues. But since the court issued its decision in 2018, the defendant has twice tried to flee from police. He has been arrested for and charged with committing a more serious crime while on bond for this one. The offense he committed

while on bond is of the same type as the offence with which he is charged in this case.

Against this evidence that the defendant either cannot or will not abide by the court's orders and keep himself out of trouble with the law, the defendant argues that he wants to protect his wife and family, that he has sleep apnea and needs a CPAP machine and that he is afraid for his health given the COVID-19 pandemic. He also argues that he needs to be out of custody to prepare his defense (he now represents himself). Only the health issue is new. And while the court understands the defendant's concerns about the pandemic, that concern does not have a material bearing on whether there are conditions of release that will ensure the safety of the community. Since this case began, the defendant has been on location monitoring. He has been on GPS monitoring. He has been subject to other conditions. He was in custody for a significant period early in the case. None of those things prevented the defendant from getting into the same kind of trouble that gave rise to the charges in this case. The court cannot conclude that there is any condition, or any combination of conditions, that will assure the safety of the community if the court were to release the defendant prior to trial.

The court has appointed Attorney Thomas J. Erickson to act as standby counsel for the defendant, as discussed at the July 27, 2021 hearing. The court soon will schedule a hearing to discuss with the government and the defendant possible dates for trial.

The court **DENIES** the defendant's motion for pretrial release. Dkt. No. 107.

The court **DENIES** the defendant's motion for a detention hearing. Dkt. No. 108.

Dated in Milwaukee, Wisconsin this 30th day of August, 2021.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**